UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTIONS, INC.                          CIVIL ACTION

VERSUS

THE TIGER PAW DAIQUIRIS &
GRILL, LLC, ET AL.                                    NO. 14-268-BAJ-RLB

## RULING AND ORDER

Before the Court is a **Motion for Default Judgment Under Federal Rules of Civil Procedure Rule 55 (Doc. 27)** filed by Plaintiff J&J Sports Productions, Inc. ("J&J"). J&J seeks a default judgment against Defendants The Tiger Paw Daiquiris & Grill, LLC ("Tiger Paw"), Robert J. Cazes, and Astro's Tiger Paw, Inc. ("Astro's"), collectively "Defendants." Defendants have not filed an opposition to the motion. Oral arguments are not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons stated below, J&J's **Motion for Default Judgment Under Federal Rules of Civil Procedure Rule 55 (Doc. 27)** is GRANTED.

I.  Background

   A.  J&J's Allegations

On May 1, 2014, J&J filed this lawsuit against Tiger Paw and its codefendants[1] under 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 553, *et seq.*; and 18 U.S.C. §§ 2511(1)(a), (5), and 2520(a). (Doc. 1 at ¶¶ 2, 19–33). J&J's Complaint alleges that on May 5, 2012, Masterson, Durr, Boies, Addington, Astro's, and Cazes "specifically and willfully"

---

[1] J&J originally filed suit against Tiger Paw, Cazes, Astro's, Kyle M. Masterson, Robert F. Durr, Jr., Ronald Boies, and Bryan Addington. Upon J&J's motion (Doc. 23), the Court dismissed the claims against Masterson, Durr, Boies, and Addington, with prejudice, on September 16, 2014. (Doc. 25).

1

directed Tiger Paw's employees to illegally intercept and broadcast in their commercial establishment a nationally telecast program for which J&J had exclusive nationwide commercial distribution and broadcast rights, and for which Defendants did not have sublicensing rights. (Doc. 1 at ¶¶ 15, 20, 21). J&J further alleges that Defendants unlawfully intercepted and broadcast the program "willfully and for the purposes of direct and/or indirect commercial advantage and/or private financial gain," and with "full knowledge" that they were not authorized to do so. (Doc. 1 at ¶¶ 23, 24). J&J seeks statutory damages, attorney's fees, and costs under § 553 or § 605. (Doc. 1 at ¶¶ 28, 33, 34).

B.  **Procedural History**

According to the proof of service affidavits filed into the record, Tiger Paw, Astro's, and Cazes were successfully served with summons notifying them that a lawsuit had been filed against them on May 15, 2014.[2] (Docs. 6, 8, 9). The proof of service affidavits were filed into the record on June 14, 2014. (*Id.*). However, Defendants failed to file an Answer to the Complaint or a motion on or before June 5, 2014, thereby missing the twenty-one day deadline outlined in Federal Rule of Civil Procedure ("Rule") 12; nor did Defendants request an extension of time to file an Answer or motion under Rule 12. Indeed, it is uncontested that Defendants have not yet filed any documents in this action.

On September 12, 2014, J&J filed a Motion for Clerk's Entry of Default against Defendants. (Doc. 22). J&J also filed an affidavit indicating that neither J&J nor its counsel had received any Answer or other opposition from Defendants. (Doc. 22-1). Rule 55 requires the Clerk of Court to enter a default against any party that has "failed to

---

[2] The proof of service affidavits indicate that Cazes was served individually, and as the person designated by law to accept service of process on behalf of Tiger Paw and Astro's. (Docs. 6, 8, 9).

2

plead or otherwise defend . . ." against an action. Fed. R. Civ. P. 55(a). Accordingly, the Clerk of Court entered an Order of Default against Defendants on September 15, 2014. (Doc. 24). J&J followed by filing the motion for default judgment under consideration here on October 15, 2014. (Doc. 27).

## II. Standard of Review

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry of default; and (3) a plaintiff's application for a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The service of summons or lawful process triggers the duty to respond to a complaint. *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D. La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)). A defendant's failure to timely plead or otherwise respond to the complaint triggers a default. *N.Y. Life Ins. Co.*, 84 F.3d at 141. Rule 55 then provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . . ." Fed. R. Civ. P. 55(a).

Once the Clerk of Court has found a defendant to be in default, the Court may, upon motion by the plaintiff, enter a default judgment against the defaulting defendant.[3] Fed. R. Civ. P. 55(a). Default judgments are "generally disfavored in the law" in favor of a trial upon the merits. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.

---

[3] Under the Local Rules of the United States District Court for the Middle District of Louisiana, a judgment of default can be entered no sooner than fourteen days after the Clerk' of Court's entry of default. L.R. 55. Here, more than fourteen days have passed since the Clerk of Court found Defendants in default. (Doc. 24.)

3

1984)). Default judgments are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations . . . . [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive party.'" *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970)). This policy however, is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (internal citations omitted). In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," the Court retains the obligation to determine whether those facts state a claim upon which relief may be granted. *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiff's factual allegations were found to be true, the defendants would not have been liable under the law).

III. Analysis

A. Whether the Court Will Grant J&J's Motion for Default Judgment

Courts have developed a two-part analysis to determine whether a default judgment should be entered against a defendant. *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D. La. 2014); *United States v. Chauncey*, No. 14-CV-32, 2015 WL 403130, at *1 (M.D. La. Jan. 28, 2015); *see also Fidelity & Guaranty Life Insurance Company v. Unknown Tr. of Revocable Trust–8407*, No. 13-CV-412-PRM, 2014 WL 2091257, at *2 (W.D. Tex. May 16, 2014) (citing cases). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

1. Whether A Default Judgment is Appropriate

The Court must initially decide whether the entry of default judgment is appropriate under the circumstances by considering the *Lindsey* factors. First, Defendants have failed to file an Answer or a motion under Rule 12 in response to the

Complaint. As such, there are no material facts in dispute.[4] Second, it is undisputed that Defendants have not responded to any of J&J's or the Court's overtures. Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [J&J's] interests." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). Third, the grounds for granting a default judgment against Defendants are clearly established, as evidenced by the action's procedural history and the Clerk's entry of default, outlined above. Fourth, as Defendants here have failed to respond at all to J&J or to the Court, the Court has no basis to find that the failure to respond was the result of either good faith mistake or excusable neglect. Fifth, Defendants' failure to file any responsive pleading or motion mitigates the harshness of a default judgment. *See Taylor*, 39 F.Supp.3d at 814. Lastly, the Court is not aware of any facts that would lead it to set aside the default judgment if challenged by Defendants. As such, the Court finds that the six *Lindsey* factors weigh in favor of default.

2.  **Whether J&J's Pleadings Establish a Sufficient Basis for a Default Judgment**

The Court must also decide whether J&J's pleadings provide a sufficient basis for a default judgement against Defendants. Section 553 prohibits the interception or receipt of any communications service offered over a cable system without specific authorization from either the cable operator or under other law. 47 U.S.C. § 553(a)(1). Similarly, the relevant portion of § 605 provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance,

---

[4] In support of this motion, J&J has filed a Statement of Undisputed Facts describing the successful service of process upon Defendants, the claimed circumstances of the allegedly unlawful broadcast, and summarizing relevant Admissions of Fact to which Defendants failed to respond. (Doc. 27-1).

purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

In considering an issue of first impression for our circuit, the Fifth Circuit recently concluded that § 553 and § 605 make different types of conduct unlawful. *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). In *Mandell*, the Fifth Circuit held that while both § 553 and § 605 prohibit the interception of communications, "[a] logical reading of the two provisions reveals a clear demarcation whereby § 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire."[5] *Id.* at 352–53 (internal quotations omitted). Where, because of the defendant's failure to respond, a plaintiff has been unable to determine the method through which the defendant accessed the unauthorized communication, district courts have awarded default judgments in favor of the plaintiff. *See e.g., J&J Sports Prods., Inc v. Wine Bistro LLC*, No: 13-6369, slip op. at 8–9 (E.D. La. July 30, 2014) (awarding damages in a default judgment under § 553 where defendant did not respond); *see J & J Sports Prods. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 69, 673–74, 675–76 (D.S.C. 2011) (accepting report and recommendation that awarded damages in a default judgment under § 605 where defendants did not respond).

J&J has alleged that its auditor observed the program being shown to approximately twenty persons on eight screens at Tiger Paw during the program's May

---

[5] Prior to the Fifth Circuit's decision in *Mandell*, a plaintiff could prevail under either § 553 or § 605 by showing only that 1) the event was shown in the defendant's establishment, 2) without the plaintiff's authorization, and 3) that the plaintiff was the exclusive licensee. *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-3052, 2014 WL 198159, at *3 (W.D. La. Jan. 14, 2014) (citing cases).

7

5, 2012 broadcast. (Doc. 27-5 at p. 1). J&J further avers that it purchased and retained the exclusive commercial exhibition licensing rights to the program, and that it did not sublicense those rights or any other rights concerning the program to Defendants. (Doc. 1 at ¶ 20, 21; Doc. 27-10 at p. 2, 3). Additionally, J&J maintains that the program "cannot be mistakenly, innocently or accidentally intercepted." (Doc. 27-10 at p. 3). J&J admits that it has not alleged exactly how the program was unlawfully intercepted, but contends that it has been unable to do so because of Defendants' failure to respond to J&J's written discovery requests. (Doc. 27-2 at p. 7). Although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," a defaulting defendant is deemed to have admitted the plaintiff's well-pleaded factual allegations. *Nishimatsu Const. Co.*, 515 F.2d at 1206. As such, the Court will allow J&J to establish liability under either § 553 or § 605 without expressly showing which statute has been violated. *See Wine Bistro, LLC*, No. 13-6369 at 8–9; *see also G & G Circuit Events*, 2014 WL 198159, at *3–4 (awarding plaintiff damages under § 553, even though the plaintiff did not identify the manner by which the unauthorized communication was intercepted, "likely because it has been unable to engage in discovery regarding that issue, due to defendants' failure to appear in this case."). The Court will grant J&J's motion for default judgment and order appropriate relief.

### B. Relief

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4. A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits

8

establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If a court can mathematically calculate the amount of damages based on the pleadings and supporting, a hearing is unnecessary. *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

### 1. Statutory Damages

J&J alleges violations under § 553, § 605, and 18 U.S.C. §§ 2511 and 2520 in its Complaint, but suggests in its Motion here that it seeks statutory damages under § 553.[6] (Doc. 27-2 at p. 4–5 & n.7). In response to a civil action in district court under § 553, a court may award a successful plaintiff statutory damages of a just sum between $250 and $10,000, as determined by the court. 47 U.S.C. § 553(c)(3)(A)(ii).

Courts have employed a number of different methods to determine a "just" amount of statutory damages, including imposing a "flat sum for damages" or a calculated sum based on the number of patrons in the defendant's establishment at the time of the violation. *Wine Bistro, LLC*, No. 13-6369 at 11–12 (citing *Joe Hand Promotions, Inc. v. Bonvillain*, No. 13-4912, 2013 WL 5935208, at *2 (E.D. La. Nov. 5, 2013). Courts have also imposed damages in an amount equal to the appropriate sublicensing fee for the establishment, but it has been noted that such a penalty may not deter future violations. *Bonvillain*, 2013 WL 5935208 at *2. In response, some courts have imposed statutory damages in an amount equal to a multiple of the sublicensing fee. *Wine Bistro, LLC*, No.

---

[6] In its Motion, J&J expressly states that an "'[a]fter the fact' payment of the cost to lawfully receive the transmission by a person who unlawfully intercepted the transmission is not a deterrent to those who disrespect the law and the rights of others," indicating that it is pursuing statutory, instead of actual, damages. (Doc. 27-2 at p. 4). J&J further seeks imprisonment or the maximum fine available under § 553 for willful violations, as well as reasonable attorney's fees and litigation costs, but misstates the relief available to it through a civil action in district court under the statute. (Doc. 27-2 at p. 5 & n.7).

13-6369 at 12 (imposing statutory damages equal to twice the sublicensing fee on similar facts). The court's goal is to balance the financial burden a significant damages award will place on the defendant with the plaintiff's financial harm, the policy and enforcement considerations behind preventing piracy, and the importance of deterrence. *Joe Hand Promotions, Inc. v. Trenchard*, No. 3:12cv1099 (SRU), 2014 WL 854537 (D. Conn. Mar. 3, 2014).

The Court finds that statutory damages in an amount twice what the sublicensing fee for lawful broadcast would have been to be just under the circumstances. *Wine Bistro, LLC*, No. 13-6369 at 12. J&J has established that Tiger Paw's sublicensing fee would have been $2,200. (Doc. 27-10 at p. 3; Doc 27-13 at p. 4). Therefore, the Court awards J&J statutory damages in the amount of $4,400.

### 2. Damages for Willful Violation

J&J also claims that Defendants' violation was willful and made for private financial gain, and seeks corresponding additional damages. (Doc. 1 at ¶¶ 16, 18; Doc. 27-2 at p. 5). If the court finds that the defendant violated § 553 willfully and for the "purposes of commercial advantage or private financial gain," the court may, in its discretion, award additional damages of up to $50,000. 47 U.S.C. § 553(c)(3)(B). Even given a lack of direct evidence that a defendant acted willfully and for purposes of commercial advantage or private financial gain, courts have found the allegation that an innocent, mistaken, or accidental interception of a broadcast is not possible to be sufficient for a showing of willfulness. *See Wine Bistro, LLC*, No. 13-6369 at 13 (citing *Entm't by J & J v. Al-Waha Enters., Inc.*, 219 F.Supp.2d 769, 776–77 (S.D. Tex. 2002)).

Courts consider five factors in determining the appropriate amount of additional damages for a willful violation, including:

> (1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages.

*Wine Bistro, LLC*, No. 13-6369 at 13 (quoting *Trenchard*, 2014 WL 854537, at *4).

J&J expressly alleges that "to the best of [its] knowledge [its] program is *not* and cannot be mistakenly, innocently or accidentally intercepted." (Doc. 27-10 at p. 3). The Court finds this showing to be sufficient for additional damages. However, J&J does not make a showing here that Defendants repeatedly violated the statute over a period of time, made substantial unlawful monetary gains, or charged a premium for food and drink. In addition, J&J's auditor noted that he was neither charged an admission or cover charge, nor observed any advertisement or promotion of the broadcast. (Doc. 27-5 at p. 2). J&J does attest to investing considerable resources to combating piracy, but assigns a value only to the $2,200 sublicensing fee it was denied due to Defendant's unlawful behavior as actual damages attributable to Defendants. (Docs. 27-10, 27-11). As such, the Court awards additional damages of $13,200, which reflects an award equal to three times the amount of the statutory damages awarded. *See, e.g., G & G Closed Circuit Events, LLC*, 2014 WL 198159, at *4 (awarding three times the statutory damages amount for a willful violation where the defendant did not charge an admission fee and was observed to have approximately twenty-five patrons at the time of the violation).

### 3. Litigation Costs and Attorney's Fees

In addition, J&J seeks attorney's fees and the costs of this litigation. (Doc. 27-2 at p. 5). Section 553 provides that a court may grant the prevailing and aggrieved party the recovery of full costs and reasonable attorney's fees. 47 U.S.C. § 553(c)(2)(C).

The Court awards J&J full litigation costs, and directs J&J to submit appropriate documentation as per the Court's Local Rules. *See* LR 54 (effective Apr. 2, 2015). However, the Court declines to award attorney's fees because J&J provided neither a requested amount nor sufficient support for any amount in the record. *See* LR 54.2 (effective May 19, 1997, amended as LR 54(b), effective Apr. 2, 2015); *G & G Closed Circuit Events, LLC*, 2014 WL 198159, at *5 (denying award of attorney's fees because of insufficient support in the record); *Bonvillain*, 2013 WL 5935208 at *3 (same).

### C. Cazes's Liability

J&J alleges that the corporation, Astro's, is the only member of the limited liability company Tiger Paw (Doc. 1 at ¶¶ 3, 6; Doc. 27-2 at p. 6), and that Cazes was an officer and director of Astro's. (Doc. 1 at ¶ 7; Doc. 27-2 at p. 6). It is axiomatic that an officer of a corporation only incurs personal liability for its torts when he has participated in them, or has had knowledge of or given consent to them. *Cf. Lee v. Griffith*, 140 So. 142, 143 (La. 1932).

In failing to respond to J&J's request for admissions, Cazes is deemed to have admitted that he was responsible for obtaining television service at The Tiger Paw on the date of the unlawful broadcast. (Doc. 27-8 at p. 2–3). Therefore, the Court finds Cazes personally liable for his tortious act.

Accordingly,

**IT IS ORDERED** that Plaintiff J&J Sports Productions, Inc.'s **Motion for Default Judgment Under Federal Rules of Civil Procedure Rule 55 (Doc. 27)** is GRANTED.

**IT IS FURTHER ORDERED** that Defendants The Tiger Paw Daiquiris & Grill, LLC, Astro's Tiger Paw, Inc., and Robert J. Cazes shall pay Plaintiff $4,400 in statutory damages, pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), and $13,200 in additional damages, pursuant to 47 U.S.C. § 553(c)(3)(B), for a total of $17,600. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58.

**IT IS FURTHER ORDERED** that Plaintiff is awarded costs pursuant to 47 U.S.C. § 553(c)(2)(C), and shall file a Memorandum of Costs in the form required by the Clerk of Court within thirty days of entry of the Judgment, in accordance with LR 54(c) (effective Apr. 2, 2015).

Baton Rouge, Louisiana, this 16th day of April, 2015.

*[signature]*

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA